EDOK Criminal Complaint (Revised 6/13)

# United States District Court
## EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>*Plaintiff,*<br><br>v.<br><br>TEON RAYNARD ROBBINS and<br>ANTWON MARQUISE WILLIAMS,<br><br>*Defendant.* | **CRIMINAL COMPLAINT**<br><br>Case No. 23-MJ-48-JAR |

I, Kevin D. Fox, the undersigned complainant, state that the following is true to the best of my knowledge and belief.

On or about March 1, 2023, in the Eastern District of Oklahoma, **TEON RAYNARD ROBBINS** and **ANTWON MARQUISE WILLIAMS,** committed the crime of **POSSESSION WITH INTENT TO DISTRIBUTE METHAMPHETAMINE**, in violation of Title 21, United States Code, Section(s) 841(a)(1) and (b)(1)(A) and Title 18, United States Code, Section 2.

I further state that I am a Task Force Officer with the Drug Enforcement Administration, and that this complaint is based on the following facts:

(See attached Affidavit of Kevin D. Fox, which is attached hereto and made a part hereof by reference.)

☒   Continued on the attached sheet.

_____
Kevin D. Fox
Task Force Officer
Drug Enforcement Administration

Sworn to on March 2, 2023.

**UNITED STATES MAGISTRATE JUDGE**
Name and Title of Judicial Officer

_____
Signature of Judicial Officer

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Kevin Fox, being duly sworn, depose and state that:

### INTRODUCTION

1. I am employed by the District 18 District Attorney's Office as a Drug and Violent Crimes Investigator and have been so since July 2015. In April 2017, I was assigned as a Task Force Officer with the Drug Enforcement Administration (DEA), and currently remain in that position. In addition to the DEA, I am assigned to the District 18 District Attorney's Office Drug and Violent Crimes Program. During my assignment with the DEA I have specialized in investigations involving narcotics trafficking and money laundering. I have received specialized training on the subject of narcotics trafficking and have been personally involved in investigations concerning the possession, manufacture, distribution of controlled substances, as well as methods used to finance drug transactions.

2. I have been a sworn fulltime police officer for the State of Oklahoma since 2013. I have participated in and supported numerous narcotic investigations involving the illegal manufacturing, possession, sale, distribution of many different types of controlled substances.

3. I am familiar with the facts and circumstances of this investigation as a result of my personal participation in the investigation, as well as from information obtained from discussions with other experienced law enforcement officers. Since this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included each and every known fact regarding the instant investigation. More specifically, I have set forth only pertinent facts that I believe are necessary to establish probable cause. The following is true to the best of my knowledge and belief.

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Kevin Fox, being duly sworn, depose and state that:

## INTRODUCTION

1. I am employed by the District 18 District Attorney's Office as a Drug and Violent Crimes Investigator and have been so since July 2015. In April 2017, I was assigned as a Task Force Officer with the Drug Enforcement Administration (DEA), and currently remain in that position. In addition to the DEA, I am assigned to the District 18 District Attorney's Office Drug and Violent Crimes Program. During my assignment with the DEA I have specialized in investigations involving narcotics trafficking and money laundering. I have received specialized training on the subject of narcotics trafficking and have been personally involved in investigations concerning the possession, manufacture, distribution of controlled substances, as well as methods used to finance drug transactions.

2. I have been a sworn fulltime police officer for the State of Oklahoma since 2013. I have participated in and supported numerous narcotic investigations involving the illegal manufacturing, possession, sale, distribution of many different types of controlled substances.

3. I am familiar with the facts and circumstances of this investigation as a result of my personal participation in the investigation, as well as from information obtained from discussions with other experienced law enforcement officers. Since this affidavit is being submitted for the limited purpose of establishing probable cause, I have not included each and every known fact regarding the instant investigation. More specifically, I have set forth only pertinent facts that I believe are necessary to establish probable cause. The following is true to the best of my knowledge and belief.

1

## PROBABLE CAUSE

4. This Affidavit is made for the limited purpose of establishing probable cause in support of a Criminal Compliant and Arrest Warrant. As set forth below, I believe there is probable cause to believe that **TEON RAYNARD ROBBINS** and **ANTWON MARQUISE WILLIAMS** did knowingly and intentionally, possess with intent to distribute 500 grams of more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and 18 U.S.C. § 2.

5. On March 1, 2023, at approximately at 10:25 A.M., Oklahoma Highway Patrol Trooper Darren Koch conducted a traffic stop on a black Dodge Ram bearing North Carolina license plate ZM4273 for speeding eastbound on Interstate 40 near Mile Marker 306 in Sequoyah County, Oklahoma, within the Eastern District of Oklahoma. Trooper Koch made contact with the driver who identified himself as **ANTWON MARQUISE WILLIAMS** and the passenger identified as **TEON RAYNARD ROBBINS**. Trooper Koch informed them of the reason for the traffic stop and both **WILLIAMS** and **ROBBINS** acknowledged speeding.

6. Trooper Koch had **WILLIAMS** come back to his patrol to be issued a warning citation. While in the patrol vehicle, Trooper Koch noticed **WILLIAMS** exhibiting signs of nervousness as Trooper Koch could see **WILLIAMS'** heart beating through his clothing. While conversing with Trooper Koch, **WILLIAMS** stated they had been visiting "people" in Yukon, Oklahoma. Trooper Koch also spoke with **ROBBINS** who stated they had traveled to Califorina but gave very vague details. **ROBBINS** stated he rented the vehicle from Enterpise but did not have a copy of the rental agreement. **ROBBINS** then called Enterprise while Trooper Koch was performing his checks and had Enterprise email him a copy of the agreement.

2

7. While Trooper Koch issued the warning citation for speeding and conducted routine checks on **WILLIAMS** and **ROBBINS**, Trooper Clint Craft conducted a free air sniff around the exterior of the Dodge utilizing his department issued K9 (Cody) and received a positive alert. Troopers Koch and Craft searched the Dodge incident to the K9 alert. During the search, Troopers observed three blue gym bags in the rear seat area. Each of the gym bags further contained quart sized clear plastic bags further containing a crystalline substance. A total of 100 bags of the crystalline substance was located within the gym bags. Troopers also located a black bag in the backseat area that contained two jars of THC rosin, four jars of marijuana and two small black packages of marijuana. **ROBBINS** and **WILLIAMS** were arrested on a state charge of Trafficking Methamphetannine and transported to the OHP Office located within the Sequoyah County Courthouse in Sallisaw, Oklahoma. Trooper Koch later located a one dollar bill containing a white powdery substance and a small plastic wrapper containing a white powdery substance inside **WILLIAMS'** wallet. Trooper Koch weighed each quart size plastic bag with an approximate weight of one pound per bag and substance did field test positive for methamphetamine.

8. On that same date, Trooper Craft contacted the DEA McAlester Resident Office regarding the stop. DEA TFOs Kevin Fox and Cody Johnson responded to interview **ROBBINS** and **WILLIAMS**.

9. TFOs Fox and Johnson, explained to **ROBBINS** his Advice of Rights. **ROBBINS** acknowledged that he understood his rights by signing the Advice of Rights form and agreed to speak with law enforcement. **ROBBINS** indicated he rented the Dodge from Enterprise Car Rental in North Carolina to go on vacation with **WILLIAMS** to Califorina. **ROBBINS** initially indicated **WILLIAMS** was a family member but later stated they were just friends. **ROBBINS** stated they left Ashboro, North Carolina on Friday February 24, 2023 and arrived in Los Angeles, Califorina

on Sunday February 26, 2023. **ROBBINS** was unsure where they stayed but compared it to an Airbnb and indicated they primarily stayed at the house before leaving Los Angeles on Tuesday February 28, 2023. **ROBBINS** only had knowledge of the gym bags the day of the traffic stop and when he noticed them he asked **WILLIAMS** about them. **WILLIAMS** told **ROBBINS** that the gym bags were his. **ROBBINS** stated he was on federal probation after having spent eleven years in federal custody for Possession with Intent to Distribute Cocaine.

10. TFOs Fox and Johnson then interviewed **WILLIAMS** who also acknowledged having undetstood his rights by signing an Advice of Rights form. **WILLIAMS** indicated **ROBBINS** had rented the Dodge for them to travel to California for a vacation and that they left North Carolina on Friday February 24, 2023 or Saturday February 25, 2023. While in Los Angeles they stayed at a residence. While in California, they had the oil changed on the Dodge. While the oil was being changed, **ROBBINS** disappeared for thirty mintues to an hour while **WILLIAMS** stayed waiting on the truck. **WILLIAMS** stated he had no money and had to wait for **ROBBINS** to come back to pay for the oil change. A recovered Jiffy Lube receipt located during the search of the vehicle showed **WILLIAMS** signed and paid for the oil change. After the oil change, **WILLIAMS** noticed the three gym bags inside the truck. When **WILLIAMS** asked about the bags, **ROBBINS** told **WILLIAMS** to "Shut the fuck up" and provided **WILLIAMS** with a user amount of heroin. **WILLIAMS** stated he has known **ROBBINS** for less than five years and had purchased heroin from **ROBBINS**. **WILLIAMS** stated he distributed heroin for **ROBBINS** and knew that **ROBBINS** also distributed methamphetamine. **WILLIAMS** stated that while waiting to be interviewed, **ROBBINS** instructed **WILLIAMS** to take the charges.

11. TFOs Fox and Johnson took possession of the crystalline substance, white powdery substance and the marijuana products. A field test was conducted on the crystalline substance

contained in several of the bags with each test indicting positive for the presence of methamphetamine. The 100 bags of crystalline substance had a total weight of approximately 47.8 kilograms.

## CONCLUSION

12. Based on the foregoing facts and my training and experience, I believe there is probable cause to believe that **TEON RAYNARD ROBBINS** and **ANTWON MARQUISE WILLIAMS** did knowingly and intentionally, possess with intent to distribute 500 grams of more of a mixture or substance containing a detectable amount of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and 18 U.S.C. § 2.

_____
Kevin D. Fox
Task Force Officer
Drug Enforcement Administration

Sworn to me on this 2nd day of March, 2023.

_____
JASON A. ROBERTSON
United States Magistrate Judge